[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13056
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2011
JOHN LEY
CLERK

D.C. Docket Nos. 1:08-cv-20332-MGC,

1:09-cr-20972-MGC-3

FREDERICK THOMAS HARRINGTON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2011)

Before CARNES, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Frederick Thomas Harrington, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. Harrington contends that his counsel was ineffective for (1) failing to fully inform him about the government's plea offer before he proceeded to trial, and (2) failing to file a pretrial motion to suppress some of the statements that he made to law enforcement officers.

I.

In April 2003 law enforcement officers launched an investigation of Harrington and his suspected drug smuggling activities. As part of the investigation, officers had placed wiretaps on Harrington's home and cellular telephone, which recorded conversations between Harrington and his coconspirators about plans for a drug smuggling trip to Jamaica. In November 2003 Harrington and a coconspirator were sailing back to Florida from Jamaica when their boat was stopped and boarded by law enforcement officers. Immediately after boarding the boat, without weapons drawn, the officers asked Harrington his name, where he had been, and where he was heading—all standard questions asked as a part of routine boarding protocol. Harrington gave the officers his name, but he lied about the location of his last port of call. The

2

officers escorted Harrington's boat back to Key West, Florida for a border search.

During the border search, officers found about 509 kilograms of marijuana hidden under the wooden floor of the sailboat and nautical charts with markings mapping out a trip from Florida to Jamaica. Officers later found 260 more kilograms of marijuana at Harrington's residence, more than $95,000 in cash in Harrington's safe deposit box, and numerous documents at a coconspirator's residence corroborating Harrington's involvement in the planning and execution of the smuggling operation.

Harrington was indicted on one count of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, one count of conspiracy to import 1,000 kilograms or more of marijuana into the United States, and one count of possessing with intent to distribute 100 kilograms or more of marijuana. At that time, Harrington was also the subject of another indictment for conspiracy, which involved different evidence of other drug smuggling events. The government made a plea offer to Harrington in this case, which required him to plead guilty to conspiracy to possess and to import at least 700 kilograms of marijuana but less than 1,000 kilograms. The plea agreement also included a stipulation of guilt to the charges in the other indictment and a recommendation by the government that any sentence resulting from that indictment be served concurrent with the sentence

on the charges contained in the indictment in this case.

The government sent a letter to Harrington's counsel describing the proposed plea agreement in detail, explaining among other things that the "proposed plea would include a recommendation that the defendant's other outstanding case be resolved with a plea to [the conspiracy count in this case] and concurrent time." Harrington's counsel met with Harrington for several hours on the following day to discuss, among other things, the proposed plea agreement.

Two days later, Harrington's counsel sent him a letter, which enclosed the government's letter and proposed plea agreement and also referred to their discussion the day before. While those documents informed Harrington of the recommendation for a concurrent sentence for the two indictments, none of them specifically disclosed the relevant conduct (in terms of the exact amount of drugs) covered by the other indictment. Before trial, the two Assistant United States Attorneys involved in the case met with Harrington and his counsel. At no time before trial did Harrington admit guilt for any of the charges covered in either indictment or express interest in accepting the plea offer. In fact, Harrington ultimately rejected the government's plea offer and proceeded to trial on the indictment in this case.

At trial, just before the jury was sworn, Harrington's counsel orally moved

on Miranda grounds to suppress Harrington's statements to the officers who initially boarded his boat. After listening to both parties' arguments, the district court denied that motion and allowed the government to put on evidence of those statements at trial. Harrington's counsel had not filed a written pretrial motion to suppress the statements. In addition to introducing the evidence seized from Harrington and his coconspirators, the government put two of the coconspirators on the stand. Both of them testified about Harrington's involvement in the conspiracy. The jury returned a verdict finding Harrington guilty on all counts, and the district court sentenced him to concurrent terms of 151 months for each count. Harrington's conviction and sentence was affirmed by this Court on direct appeal. United States v. Harrington, 2004 Fed. Appx. 784 (11th Cir. 2006), cert. denied Harrington v. United States, 549 U.S. 1244, 127 S.Ct. 1349 (2007). Shortly after Harrington was sentenced in this case, the other indictment was dismissed at the request of the government.

Harrington later filed in the district court a 28 U.S.C. § 2255 motion to vacate his sentence. He raised two claims that he had received ineffective assistance of counsel. A magistrate judge held an evidentiary hearing on his claim about his counsel's failure to fully inform him about government's plea offer. At the hearing, Harrington, his trial counsel, and the two Assistant United States

5

Attorneys who had prosecuted the case testified. While Harrington and his counsel could not remember the specifics of any pretrial discussions with counsel for the government, the lead prosecutor testified that he told Harrington and his counsel that the other indictment "was going to be subsumed into" the indictment in this case.

Harrington's own testimony was the only evidence he offered to show his counsel's deficient performance and its effect on his decision of whether to accept the proposed plea agreement. The magistrate judge found Harrington's testimony to be "disingenuous" and not credible because it was "equivocal and contradictory" and was "not responsive to the questions posed." The magistrate judge concluded that Harrington failed to meet his burden of proof for both of his ineffective assistance of counsel claims. The district court adopted the magistrate judge's report and recommendation and denied Harrington's motion to vacate his sentence but granted a certificate of appealability.

## II.

In a § 2255 proceeding, we review <u>de novo</u> legal conclusions and review factual findings only for clear error. <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004). "[W]hether counsel is ineffective is a mixed question of law and fact that we review <u>de novo</u>." <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 790

(11th Cir. 2005).

The Sixth Amendment gives criminal defendants the right to the effective assistance of counsel. U.S. Const. Amend. VI; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. See Strickland, 466 U.S. at 687–88, 104 S.Ct. at 2064–65. For the first prong, we must be "highly deferential" when scrutinizing counsel's performance. Id. at 689, 104 S.Ct. at 2065. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. And in making that determination, "a court . . . must consider the totality of the evidence before the judge or jury." Id. at 695, 104 S.Ct. at 2069.

### III.

Harrington first contends that his counsel was ineffective for failing to fully inform him about the government's plea offer before he proceeded to trial. Harrington argues that his counsel did not adequately explain the relevant conduct and the sentence exposure that would apply to the other indictment. He asserts

7

that without that critical information he could not knowingly and intelligently decide whether to accept the plea offer or proceed to trial.

To establish prejudice based on a rejected plea offer, a defendant must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); see also Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) ("[A defendant who rejects a plea offer] must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." (quotation marks and alterations omitted) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985))).

The record supports the magistrate judge's determination that Harrington's testimony about whether he would have accepted the plea offer was disingenuous and not credible. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) ([W]e must accept [a credibility determination] unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." (alterations omitted)). Harrington discussed the plea offer at length with his counsel and never admitted guilt nor indicated any interest in accepting the plea offer and giving up his right to a jury trial and any

later appeals. Harrington's testimony was the only evidence that he offered concerning whether he would have accepted the offer if he had been more fully informed, and the magistrate judge's determination that his testimony was not credible is supported by the record. Harrington thus failed to meet his burden of proving that he was prejudiced by his counsel's performance.

IV.

Harrington also contends that his counsel was ineffective for failing to file a pretrial motion to suppress the statements, including the false statement about his last port of call, that he made to the law enforcement officers who initially boarded his boat. He argues that the officers were required to give him <u>Miranda</u> warnings. Because they did not, he asserts that his statements to them were not admissible and but for his counsel's failure to file a written pretrial motion to suppress, the statements would have been excluded. He further argues that the use of those statements at trial was "prejudicial <u>per</u> <u>se</u>" because it was an "assassination of character" that "showed consciousness of guilt."

Even assuming the statements would have been excluded if Harrington's counsel had filed a written instead of oral motion to suppress—which is doubtful—there was more than enough evidence without Harrington's statements to support the jury's verdict. The government introduced evidence of the 509

kilograms of marijuana found on the sailboat, the nautical charts found on the sailboat that mapped out Harrington's trip to Jamaica, the 260 kilograms of marijuana found at Harrington's residence, over $95,000 in cash found in Harrington's safe deposit box, the documents found at a coconspirator's residence evincing Harrington's involvement in the drug smuggling scheme, recordings of phone conversations between Harrington and his coconspirators about the smuggling operation, and the testimony of two of those coconspirators about Harrington's involvement in the smuggling operation.  Because there was substantial evidence of his guilt apart from his statements to the officers who boarded his boat, Harrington has not met his burden of proving that he was prejudiced by the introduction of that evidence.

**AFFIRMED.**